UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL MAURICE HATCHETT,

       Plaintiff,

vs.

CITY OF DETROIT,
KENNETH WILLIAMS,
HILTON NAPOLEON,
CITY OF STERLING HEIGHTS,
MICHAEL REECE,
SCOTT LUCAS,
RICHARD VAN SICE,
JEFFREY PLAUNT,
COUNTY OF MACOMB,
CARL MARLINGA and
ERIC KAISER,

       Defendants.
_____/

Civil Action No.
08-CV-11864

HON. BERNARD A. FRIEDMAN

## **OPINION AND ORDER GRANTING THE MOTIONS OF DEFENDANTS CITY OF DETROIT, KENNETH WILLIAMS AND HILTON NAPOLEON FOR SUMMARY JUDGMENT**

This matter is presently before the court on (1) the motion of defendant City of Detroit for summary judgment [docket entry 114] and (2) the motion of defendants Kenneth Williams and Hilton Napoleon for summary judgment [docket entry 115]. Plaintiff has responded and defendants have replied. Pursuant to E.D. Mich. LR7.1(f)(2), the court shall decide these motions without oral argument.

*Background*

This is a case of "wrongful conviction." In March 1998 plaintiff Nathaniel Hatchett was convicted following a bench trial in Macomb County Circuit Court of carjacking, armed

robbery, kidnapping and first degree criminal sexual conduct. He was sentenced to 25 to 40 years in prison. In 2008, after having been incarcerated for over eleven years, Hatchett was released due to the efforts of the Innocence Project at The Thomas M. Cooley Law School. Lawyers at the Innocence Project learned that a DNA test (discussed below), conducted before trial at the prosecutor's request, was not disclosed to the defense. Based in part on the discovery of that DNA test, the Innocence Project persuaded the current Macomb County prosecutor to dismiss the charges against Hatchett and stipulate to his release.

The crimes of which Hatchett was convicted were committed on November 12, 1996, in Sterling Heights, Michigan. The victim, Annett Ventimiglia, finished her shift as a K-Mart cashier at about midnight. As she was getting into her car, she was accosted by a young man who threatened to shoot her if she did slide onto the passenger seat. She complied. The assailant drove the car onto a side street and raped Ventimiglia. After threatening to kill her and her family if she reported the incident, the rapist let Ventimiglia out and he drove off with her car. Ventimiglia immediately called the police and was taken to a hospital, where semen was collected from her vagina and underwear. Three days later, a Detroit police officer, defendant Kenneth Williams, spotted Hatchett and four passengers driving Ventimiglia's car in Detroit. Hatchett was arrested and questioned by Williams and then turned over to Sterling Heights police officers, defendants Richard Van Sice and Jeffrey Plaunt. After several hours of questioning, Hatchett confessed to the crime.

In June 1997, several months before trial, the Michigan State Police crime lab issued a DNA report that concluded the semen collected from Ventimiglia did not belong to Hatchett. This report was disclosed to defense counsel and the court and is not an issue in the present case. In mid-August 1997 the prosecutor, defendant Eric Kaiser, met with Van Sice and the victim. According

2

to Kaiser's affidavit, at this meeting "it was discussed . . . whether the victim's husband would voluntarily provide a blood sample to determine if his DNA matched the donor of the semen found on the victim's vaginal swab and panties." Kaiser Aff. ¶ 11. The husband's blood sample was sent to the Michigan State Police crime lab for testing. This test, which excluded Ventimiglia's husband as the semen donor, was completed on September 11, 1997. Plaintiff alleges that while both Kaiser and Van Sice received a copy of the report containing these test results, neither plaintiff nor his criminal defense attorney was ever informed of the test or its results.

This DNA test, while not directly exculpatory, nonetheless gained significant importance at Hatchett's trial. Despite knowing the husband was excluded as the semen donor, Kaiser stated during his closing argument that it was unimportant that Hatchett's DNA test results excluded him as the donor because the victim "was only fairly certain that the Defendant ejaculated at all. We're not allowed to speculate or under the rules or statute question the victim as to any other possibilities here. We really can't speculate whether another person, *her husband*, the Lone Ranger created any vaginal deposits that were eventually tested. . . ." Trial Tr. 250-51 (Macomb County Defs.' Mot. for Summ. J., Ex. 2). In commenting on the DNA test that excluded Hatchett as the semen donor, the trial judge indicated this "certainly presents a possible doubt," but he found it to be outweighed by the other evidence, including Hatchett's confession and the victim's identification of him as the rapist. The judge downplayed the significance of the DNA test "given the multiple explanations that may present for the test results received on this examination" [sic] (Tr. 280). He did not elaborate as to the "multiple explanations." In affirming the conviction, the Michigan Court of Appeals subscribed to Kaiser's theory, which was repeated on appeal by another assistant Macomb County prosecutor, that the semen collected from the victim may have come from her

3

husband:

> Defendant additionally contends that his innocence was established by the results of a DNA analysis performed on semen found in the victim's vagina and underpants. However, although DNA analysis of the two identifiable genetic loci on the victim's vaginal swab and four identifiable loci on her underpants established that defendant was not the donor of that material, there are several plausible explanations for these results; for example, *the donor might have been the victim's spouse*. Furthermore, the victim told the treating nurse that defendant ejaculated "on" her, and she told the treating physician that she was only "fairly certain" that defendant ejaculated at all; therefore, it is altogether possible that defendant's semen would not be found in the victim's vagina or in her underpants.

*People v. Hatchett*, 2000 WL 33419396, at *2 (Mich. Ct. App. May 19, 2000) (emphasis added). The Michigan Supreme Court denied Hatchett's delayed application for leave to appeal. *See People v. Hatchett*, 463 Mich. 920 (2000).

In March 2008, lawyers associated with The Thomas M. Cooley Law School Innocence Project filed a motion in Macomb Circuit Court on Hatchett's behalf for a new trial. One of the arguments made in support of this motion was that "the defense, the trial court, and the court of appeals were never made aware of the fact that the victim's husband was also excluded as a donor of the biological material. . . . If the court of appeals would have had knowledge of Mr. Ventimiglia's exclusion in addition to Mr. Hatchett's exclusion, the reasonable conclusion would have been that Mr. Hatchett should not have been convicted of this crime." Sterling Heights Defs.' Mot. for Summ. J., Ex. F, pp. 10-11. In his response to this motion, Macomb County prosecutor Eric Smith, who was elected to the office long after Hatchett was convicted, stated:

> Significant also was the Assistant prosecutor's statement in closing "We really can't speculate whether another person, her husband, the Lone ranger created any vaginal deposits that were eventually tested." (TR pp 250-251). The record is not clear as to whether the test results excluding the victim's husband as the source

4

> of the material from the vaginal swab and the swabs from the clothing of the victim information [sic] was turned over to the defense counsel before trial. Nonetheless, no mention of the husband's exclusion was made by either side, not commented on by the judge.
>
> * * *
>
> The People have extensively reviewed the evidence in this case. Conclusions from this review are that it appears, under any reasonable circumstance, that the donor of the biological material is the perpetrator. Although significant time has passed since the original investigation, it further appears that appropriate methods of collection and preservation were utilized so as to ensure as much as possible the validity of the results. Further, that the original court, in its analysis of the DNA evidence at trial, was not presented with the exclusion of the husband at trial. Thus the People cannot reasonably oppose defendant's motion for a new trial. . . .

Pl.'s Resp. to the Macomb County Defs.' Mot. for Summ. J., Ex. 1, pp. 3-4. In April 2008, the Macomb County Circuit Court granted Hatchett's motion, dismissed the charges, and ordered him to be released.

Plaintiff commenced the instant lawsuit in May 2008. He bases this case primarily on two alleged instances of misconduct. First plaintiff alleges that Kaiser and Van Sice deliberately withheld the results of the DNA test of the victim's husband, thereby violating his due process rights. Second he alleges that his confession was coerced by the two Sterling Heights police officers, Van Sice and Plaunt. Hatchett also alleges that these officers, as well as the Detroit police officer, Williams, told him specific details about the abduction and rape so that, after being interrogated for hours by Van Sice and Plaunt, he was able to make a believable, albeit false, "confession" because he knew specific details that were known only to the victim, the perpetrator, and the interrogating police officers. Hatchett claims he initially denied being the perpetrator, but that after several hours of interrogation, first in Detroit and then in Sterling Heights, he eventually

5

succumbed. In this connection it is noteworthy that Hatchett was a 17-year-old high school student at the time with an

IQ of only 74. The confession was an important part of the prosecutor's case. In explaining his verdict, the trial judge stated that the confession was "of overwhelming importance" (Tr. 277). And the "strikingly detailed confession" was one of the reasons mentioned by the court of appeals in support of its conclusion that the conviction was based on sufficient evidence. *People v. Hatchett*, 2000 WL 33419396, at *1.

The defendants in this matter fall into four groups. The "City of Detroit defendants" are the City of Detroit, Detroit police officer Williams, and Detroit police lieutenant Hilton Napoleon, who allegedly "supervised, trained, and directed . . . Williams[] in the handling of the . . . investigation and prosecution." Am. Comp. ¶ 15. The "Sterling Heights defendants" are the City of Sterling Heights, Sterling Heights police officers Van Sice and Plaunt, and Sterling Heights police sergeants Michael Reece and Scott Lucas, who allegedly "supervised, trained, and directed . . . Van Sice and Plaunt[] in the handling of Mr. Hatchett's investigation and prosecution." *Id.* ¶ 18. The "Macomb County defendants" are Macomb County and Carl Marlinga, who allegedly "supervised, trained, and directed the assistant prosecuting attorneys in the handling of Mr. Hatchett's investigation and prosecution [and] was an official policymaker for Defendant Macomb County." *Id.* ¶ 20. While Kaiser was an assistant Macomb County prosecutor at time relevant to this case, he is no longer employed by Macomb County and is represented separately.[1]

---

[1] In an earlier opinion and order, the court granted summary judgment for defendants City of Sterling Heights, Richard Van Sice, Jeffrey Plaunt, Michael Reece, Scott Lucas, County of Macomb, Carl Marlinga and Eric Kaiser. The instant motion seeks summary judgment on behalf of the remaining defendants.

The amended complaint ("AC") asserts the following 15 claims:

Count I alleges that defendants Van Sice, Plaunt and Williams violated Hatchett's Fourteenth Amendment due process rights by fabricating his confession (by feeding him details of the crime and coercing him to confess falsely) and by using the confession to convince the prosecutor's office to prosecute. The AC also frames this as a *Brady* violation on the theory that defendants had a duty to disclose that the confession was false and coerced. This count also includes the claim that Van Sice violated plaintiff's *Brady* rights by failing to disclose the victim's husband's DNA test results.

Count II alleges that defendant Kaiser violated Hatchett's Fourteenth Amendment due process rights by failing to disclose – to Hatchett's counsel or the court – the results of the victim's husband's DNA test, which the AC alleges was *Brady* material. The AC further alleges that Kaiser "destroyed" this evidence by failing to include it in the prosecutor's case file, thereby preventing the report from being discovered by the assistant prosecutor who handled the appeal. The AC alleges, alternatively, that if Kaiser did not know of these test results, then he violated plaintiff's rights by failing to inquire about the test results after the husband gave a blood sample for testing.

Count III alleges that defendants Van Sice, Plaunt and Williams violated plaintiff's Fourth and Fourteenth Amendment rights by causing him to be arrested without probable cause, as these defendants knew his confession was coerced and fabricated. Hatchett also alleges that at the preliminary examination Van Sice and Williams testified falsely that he had confessed.

Count IV alleges that defendants Van Sice, Plaunt and Williams violated Hatchett's Fifth and Fourteenth Amendment rights to be free from self-incrimination and "coercive police

7

conduct."

Count V, entitled "supervisory liability," alleges that defendant Napoleon was present during Williams' interrogation of Hatchett at Detroit police headquarters; and that defendants Reece and Lucas were present when Van Sice and Plaunt interrogated Hatchett, first at Detroit police headquarters and subsequently at the Sterling Heights police station. Napoleon, Reece and Lucas allegedly were deliberately indifferent in their supervision, training, and discipline of these officers. Defendant Marlinga and Macomb County allegedly "failed to train, supervise, and discipline the assistant prosecutors in the proper and constitutional investigation and prosecution of criminal defendants . . . about the receipt, tracking, and disclosure of exculpatory information." Am. Comp. ¶ 279.

Counts VI and VII assert *Monell* claims of municipal liability against the City of Detroit and the City of Sterling Heights, respectively, based on their alleged "practice and custom of coercing witness[es] and suspects into false confessions; failing to investigate crimes adequately, fabricating evidence in investigations, and failing to disclose exculpatory and impeachment evidence." *Id.* ¶¶ 284, 294.

Count VIII asserts a *Monell* claim of municipal liability against Macomb County based on its alleged "practice and custom regarding inadequate tracking, filing, sharing, and disclosure of exculpatory information." *Id.* ¶ 303. This count also faults Marlinga for failing to train the prosecutors in these areas. *See id.* ¶¶ 304-309.

Count IX alleges that defendants Van Sice, Plaunt and Williams conspired to deprive Hatchett of his constitutional rights by supplying him with details and coercing his confession.

Count X alleges that all defendants violated Hatchett's rights under Article 1, Section

8

17 of the Michigan Constitution by interfering with his right to "fair and just treatment in an investigation and prosecution." *Id.* ¶ 320.

Counts XI, XII, XIII, XIV and XV assert common law tort claims against Van Sice, Plaunt and Williams for false arrest/false imprisonment, malicious prosecution, intentional infliction of emotional distress, abuse of process and gross negligence.

*Defendants' Motions for Summary Judgment*

The claims against the City of Detroit defendants are, in short, that (1) Williams and others violated Hatchett's due process rights by supplying him with details of the crime and coercing his confession, (2) Williams and others caused plaintiff to be arrested without probable, (3) Napolean failed to train and supervise Williams, and (4) the City of Detroit's policies and customs caused the violations committed by Williams and Napoleon. Therefore, most of the claims against these defendants are based on the allegation that Hatchett's confession was coerced. The only other claim is that Williams arrested plaintiff without probable cause.

Defendants argue that most of plaintiff's claims fail because he is collaterally estopped from relitigating the trial judge's finding that his confession was free and voluntary. The trial judge held a *Walker* hearing[2] in September 1997, at which he heard testimony from defendants

---

[2] A *Walker* hearing is conducted in accordance with *People v. Walker*, 374 Mich. 331 (1965), which requires trial courts, not juries, to determine the voluntariness of confessions. At such a hearing,

> the defendant may take the stand and testify for the limited purpose of making of record his version of the facts and circumstances under which the confession was obtained. We hold further that by so doing defendant does not waive his right to decline to take the stand on trial in chief, if retrial is ordered. Neither does he waive any of the other

9

Williams and Van Sice.[3] Hatchett's attorney cross-examined both witnesses extensively. The judge also listened to an audio recording of the confession. Hatchett declined to testify, although the judge explained to him that anything he said could not be used against him at trial. At the conclusion of the hearing the judge found "that the statements elicited from the Defendant were elicited as voluntary statements considering the totality of the circumstances. . . . [I]t's clear that Detective Van Sice was very careful to make sure that the Defendant was responding knowledgeably to the questions posed. . . . [T]he Defendant was indeed understanding and voluntarily waiving his Miranda associated rights in providing the statements, so the Court will deny the motion to suppress" (Tr. 63-65). Hatchett did not appeal this ruling.

Hatchett concedes that the trial judge held a *Walker* hearing and found the confession to be voluntary. He also concedes that, as a general rule, if a judge finds at a *Walker* hearing that a confession was voluntary, this finding is binding in a subsequent civil proceeding. Nonetheless,

---

rights stemming from his choice not to testify.

*Id.* at 338.

[3] A copy of the *Walker* hearing transcript is attached to defendants' motions Exhibit 3. At the beginning of the hearing, the trial judge identified the following defense claims as being the ones at issue:

> The Defendant alleges, basically, in paragraph 5 of their motion that they have basic, specific claims that violate Walker and Miranda. They are: The Detective falsely informing the Defendant if he cooperated and tell the officers what they wanted he would be released. Officers failed to believe the Defendant's initial statement that he wasn't involved and continued to question the Defendant until he said what they demanded, and finally the arresting officers provided the Defendant with a specificity of facts sufficient to give him the ability to then detail and outline the crime.

(Tr. 1-2.)

Hatchett argues that he is not collaterally estopped from contesting the voluntariness of his confession in this case because "[w]hen Plaintiff was granted a new trial the judgment was set aside, and all such factual determinations were vacated with it, and their preclusive effect surrendered." Pl.'s Br. in Opp'n to the City of Detroit's Mot. for Summ. J. at 8.[4]

The parties agree that there is no Michigan case law directly addressing the specific issue in the present case, namely, whether the voluntariness of a confession can be relitigated in a subsequent civil action if a finding of voluntariness was made at a *Walker* hearing in a criminal matter in which the charges have been dismissed. However, the parties do agree with the following general statement of Michigan law on collateral estoppel:

> For collateral estoppel to apply, a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment. In addition, the same parties must have had a full opportunity to litigate the issue, and there must be mutuality of estoppel.

*Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n.3 (Mich. 1988). The parties also agree that the mutuality requirement does not apply where, as here, the doctrine is being asserted defensively

---

[4] This statement is not entirely correct. More precisely, Hatchett filed a motion with the trial court for a new trial pursuant to Mich. Comp. Laws § 770.16, a Michigan statute that provides a procedure for "testing of biological material identified during the investigation leading to [an incarcerated defendant's] conviction, and for a new trial based on the results of that testing." Section 770.16(1). The prosecutor stipulated to retest the body fluids taken from the victim and the blood donated by the victim's husband, and the same DNA results were obtained as before. In his response to Hatchett's motion, the prosecutor indicated he "cannot reasonably oppose defendant's motion for a new trial" and "move[d] that the charges in this case be dismissed." People's Answer to Defendant's Motion for New Trial, attached as Exhibit A to Pl.'s Br. in Opp'n to Dft. Kaiser's Mot. for Summ. J. The "hearing disposition" dated April 14, 2008, does not indicate that a ruling on Hatchett's motion was made. *See id.* Ex. B. This document does state: "People's motion to dismiss charges granted." *Id.* Nothing in the record suggests that the "judgment of conviction was set aside," as plaintiff asserts. Under Michigan law this would be accomplished by filing a motion for relief from judgment pursuant to MCR 6.502.

11

against a party who had an opportunity to litigate the issue in the prior proceeding. *See Kloian v. Van Fossen*, 2007 WL 942195, at *4 (Mich. App. Mar. 29, 2007), *citing Monat v. State Farm Ins. Co.*, 469 Mich. 679, 680-681, 691, 694-695 (2004). Finally, the parties agree that Michigan courts, in some cases, have looked to §§ 28 and 29 of the Restatement (Second) of Judgments in deciding whether to give preclusive effect to a factual determination that was made in a prior action.[5]

---

[5] Section 28 of the Restatement states that relitigation is not precluded if

> (1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or
>
> (2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
>
> (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or
>
> (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or
>
> (5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or ©) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

It appears that the only exceptions listed in §§ 28 and 29 which might apply in the present case are the general catch-alls, such as § 28(2) ("to avoid inequitable administration of the

---

Section 29 of the Restatement lists the following additional circumstances under which a party may be permitted to relitigate a previously determined issue:

> (1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
>
> (2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;
>
> (3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;
>
> (4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;
>
> (5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
>
> (6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;
>
> (7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;
>
> (8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

laws"); § 28(3) ("differences in the quality or extensiveness of the procedures followed in the two courts," i.e., plaintiff has full discovery in the present case); § 29(2) ("the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue"); and § 29(8) ("other compelling circumstances"). Plaintiff argues he did not have a "full and fair opportunity" to litigate the voluntariness issue at the *Walker* hearing because Williams, Van Sice and Plaunt supplied him with details of the crime, coerced his confession, and testified falsely at the *Walker* hearing, and also because Van Sice and Kaiser failed to disclose the victim's husband's DNA test. The court disagrees. Plaintiff clearly had the opportunity at the *Walker* hearing, where he was represented by counsel, to call witnesses, cross-examine the prosecutor's witnesses, and to testify on his own behalf. He elected to do nothing but cross-examine the prosecutor's witnesses. Plaintiff also could have appealed the trial judge's finding on voluntariness, as part of his appeal from the judgment, but again he elected not to do so and allowed this finding to go unchallenged. Therefore, the court finds that none of the exceptions listed in §§ 28-29 of the Restatement applies.

Factual findings made at a *Walker* hearing are considered to be final determinations on the merits. *See, e.g., People v. Gray*, 393 Mich. 1, 4 (1974) ("the determination of involuntariness at a Walker hearing [is] a factual determination. . . . [I]t should be binding on the People for all purposes under the doctrine of collateral estoppel. We see no good purpose to be served by re-litigating the question of voluntariness when that matter has been fully and fairly presented to competent authority for determination"); *People v. Mann*, 89 Mich. App. 511 (1979) (stating, based on *Gray*, that a finding of voluntariness at a *Walker* hearing in one criminal case collaterally estopped defendant from relitigating the issue in a second, related criminal case). *See*

14

*also Hirmuz v. City of Madison Heights*, 469 F. Supp.2d 466, 478 (E.D. Mich. 2007) (citing *Mann* for the proposition that "[i]n Michigan, collateral estoppel applies to bar relitigation of claims raised and determined at a *Walker* hearing when the criminal defendant is convicted").

While the case authority on the point is scant, the court is persuaded that the rule from *Mann* and *Gray* applies even when the validity of the criminal judgment is later called into question. In *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001), the Sixth Circuit stated:

> There is an additional reason for holding that plaintiff had no cause of action under § 1983 for malicious prosecution. Plaintiff contested the issue of probable cause at his preliminary hearing. Since an accused has the right to call witnesses and cross-examine witnesses produced by the State, a preliminary hearing is an adversary proceeding under Michigan law. *People v. Johnson*, 8 Mich.App. 462, 466, 154 N.W.2d 671 (1967). In this case plaintiff also contested the finding of probable cause in state circuit court after the examining judge bound him over. Under these circumstances we believe he is collaterally estopped from raising the issue of probable cause in his § 1983 claim for malicious prosecution. Where a party has had a "full and fair opportunity" to litigate an issue in earlier state proceedings, he is precluded from relitigating the same issue in a later federal case. *Allen v. McCurry*, 449 U.S. 90, 94-96, 103-04, 101 S.Ct. 411, 414-15, 419, 66 L.Ed.2d 308 (1980). . . .
>
> We do not hold that every determination in a preliminary hearing should be given preclusive effect in a subsequent § 1983 action. Some preliminary hearings are little more than formalities. Also, even when an opportunity for full adversary proceedings is afforded, strategic concerns may counsel against engaging in such an exercise at the early stages of a criminal proceeding. However, where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action.

Significantly, the plaintiff in *Coogan* prevailed in the criminal case because the court dismissed the charges on a speedy trial violation. This is important because the probable cause finding was

15

accorded collateral estoppel effect in the subsequent § 1983 action even though, just as in the present case, the criminal charges had been dismissed. The same reasoning supports the conclusion that a finding of voluntariness at a *Walker* hearing is binding in a subsequent civil action even if the criminal charges have been dismissed in the interim. In both cases the finding was made in a separate judicial proceeding where the defendant-turned-plaintiff had a full and fair opportunity to litigate the issue in question and, indeed, took full advantage of that opportunity.

In support of his position that he should not be bound by the trial judge's finding of voluntariness, plaintiff cites two Sixth Circuit cases *Gregory Const. Co. v. Blanchard*, 879 F.2d 864 (6th Cir. 1989) (unpublished), and *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir.1985), both for the statement that the "general rule is that a judgment which is vacated, for whatever reason, is deprived of its conclusive effect as collateral estoppel." *Gregory Const. Co.* was a public contracting case involving issues having nothing to do with those in the present case, but *Dodrill* is analogous. In *Dodrill*, plaintiff was charged with possession of marijuana. A jury convicted, despite Dodrill's defense that the police officer lied and planted the marijuana in his car. On appeal, the conviction was vacated on the grounds that the case had been prosecuted under an unconstitutional local ordinance. Dodrill then brought a § 1983 action against the officer. The district court granted summary judgment for the officer on the grounds that the alleged Fourth Amendment violation had been litigated during the criminal case and decided by the jury in the officer's favor. The Sixth Circuit reversed:

> We have found no Ohio law on this specific point, but the general rule is that a judgment which is vacated, for whatever reason, is deprived of its conclusive effect as collateral estoppel. . . .
> Any other rule would needlessly and astronomically proliferate the number of issues raised on appeal. If a judgment could be entirely vacated yet preclusive effect still given to issues

16

> determined at trial but not specifically appealed, appellants generally would feel compelled to appeal every contrary factual determination. Such inefficiency neither lawyers nor judges ought to court. Litigants ought to be encouraged to expend their energies on their most compelling issues and arguments, without paranoia about the preclusive effect of other issues or determinations.
>
> Dodrill's appeal from his conviction was based solely on constitutional grounds because he believed that issue presented the best opportunity for reversal. By this course of action he was not acquiescing in adverse factual determinations made at his trial. When he won his appeal and the judgment was vacated, all such factual determinations were vacated with it, and their preclusive effect surrendered.

*Id.* at 444-45. The court finds *Dodrill* to be inapplicable. In addition to dealing with Ohio law, not Michigan law, the factual issues in *Dodrill* (i.e., whether the police officer lied and planted evidence) were resolved within the jury's general verdict, whereas in the present case the discreet issue of voluntariness was resolved in a separate, adversarial judicial proceeding, where Hatchett had a full and fair opportunity to offer evidence, testify, and cross-examine the government's witnesses.

In sum, the court concludes that plaintiff is collaterally estopped from relitigating the voluntariness of his confession because this issue was conclusively resolved against him at his *Walker* hearing. This conclusion is supported by the Michigan Supreme Court's decision in *People v. Gray*, 393 Mich. 1, 4 (1974), and the Sixth Circuit's decision in *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987). Further, none of the exceptions to this rule outlined in §§ 28-29 of the Restatement on Judgments applies. Plaintiff had a full and fair opportunity to litigate the voluntariness issue at the *Walker* hearing. He elected not to testify. Nor did he appeal the finding of voluntariness, although he did appeal (unsuccessfully) on grounds of insufficiency of the evidence. And although the charges against Hatchett were eventually dismissed, the reason this was

done had nothing to do with the voluntariness of his confession being questioned. Defendants are therefore entitled to summary judgment on Counts I, IV and IX.

By the same token, plaintiff's claim in Count III that Williams participated in the "fabrication" of evidence (allegedly by coercing plaintiff to make inculpatory statements) which led to his false confession which led to false charges being brought against him by the Macomb County prosecutor, must fail. Clearly Williams had probable cause to arrest plaintiff, as Williams saw plaintiff driving the victim's car within days of its having been reported stolen. Further, Williams – a City of Detroit police officer – had nothing to do with "Seeking The Charges Against Mr. Hatchett," as is alleged in the heading of this count. As plaintiff himself acknowledges in ¶ 244 of the Amended Complaint, it was defendant Van Sice, a Macomb County detective, who presented the case to an assistant Macomb County prosecuting attorney for authorization of charges. In any event, plaintiff is collaterally estopped from pursuing any claim that depends, as does this one, on the alleged involuntariness of his statements or confession to any of the defendants, as this factual issue was decided against him conclusively at the *Walker* hearing.

Plaintiff's claim against defendant Napoleon is for "supervisor liability" (Count V). The mere fact that Napoleon "was a Lieutenant in the Detroit Police Department[] with direct oversight responsibility for Defendant Office Williams," Am. Compl. ¶ 261, does not give rise to any liability on his part under § 1983. *See Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.1982). Even if Napoleon had been directly involved in obtaining the inculpatory statements and confession at issue in this case, plaintiff is collaterally estopped from asserting such a claim for the reasons articulated above. The court shall therefore grant summary judgment for defendant Napoleon on Count V.

Plaintiff's claim against the City of Detroit is that it inadequately trained and/or supervised and/or disciplined Williams. *See* Am. Compl. ¶ 272.[6] More specifically, plaintiff alleges that the City of Detroit "failed to train, supervise, and discipline their [sic] police officers in the proper and constitutional method of conducting interrogations and taking of confessions; investigating crimes adequately; and disclosing exculpatory and impeachment evidence to the prosecutor . . . ." *Id.* ¶ 287.

Given the court's conclusion that plaintiff's constitutional rights were not violated by either Williams or Napoleon, plaintiff's *Monell* claim against the City of Detroit must fail as well. As the Supreme Court held in *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), once it has been determined that the individual defendant(s) inflicted "no constitutional injury," then a finding of municipal liability is "inconceivable." *See also Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988); *Dye v. City of Warren*, 367 F. Supp.2d 1175, 1190 (N.D. Ohio 2005). The court shall therefore grant summary judgment for defendant City of Detroit as to Counts V and VI.

Finally, the court concludes that the reasons for granting summary judgment for defendants on plaintiff's federal claims apply equally to his state law claims (i.e., violation of the Michigan Constitution, false arrest, false imprisonment, malicious prosecution, emotional distress, abuse of process, and gross negligence). The court shall therefore grant summary judgment for defendants on Counts X - XV as well.

---

[6] The allegation in ¶ 268 that the City of Detroit inadequately "train[ed] and/or supervis[ed] their [sic] prosecutors" is nonsensical inasmuch as neither Williams nor Napoleon is a prosecutor and, moreover, this case was prosecuted by Macomb County, not the City of Detroit.

*Conclusion*

For the reasons stated above, the court concludes that defendants Williams, Napoleon and City of Detroit are entitled to summary judgment on all of plaintiff's claims. Accordingly,

IT IS ORDERED that the motion of defendants Williams and Napoleon for summary judgment is granted.

IT IS FURTHER ORDERED that the motion of defendant City of Detroit for summary judgment is granted.

DATED: April 30, 2010           s/Bernard A. Friedman
                                             BERNARD A. FRIEDMAN
                                             UNITED STATES DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on April 30, 2010.

                                                     s/Deborah J. Goltz
                                                     DEBORAH J. GOLTZ
                                                     Case Manager